IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE DERIVATIVE LITIGATION, HERLEY INDUSTRIES INC. | Civil Action No. 06-2964 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF PROPOSED SETTLEMENT AND
AGREED AWARD OF ATTORNEYS' FEES AND EXPENSES**

**LAW OFFICES BERNARD M. GROSS, P.C.**
Deborah R. Gross (ID No. 44542)
Suite 450, Wanamaker Building
Juniper and Market Streets
Philadelphia, Pennsylvania 19107
Tel: 215-561-3600
Fax: 215-561-3000

**GARDY & NOTIS, LLP**
James S. Notis (*pro hac vice*)
Jennifer Sarnelli (*pro hac vice*)
Charles A. Germershausen
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

**FARUQI & FARUQI, LLP**
Jacob A. Goldberg (ID No. 66399)
101 Greenwood Avenue, Suite 600
Jenkintown, Pennsylvania 19046
Tel: 215-277-5770
Fax: 215-277-5771

*Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................iv, v, vi, vii

PRELIMINARY STATEMENT .................................................................... 1

PROCEDURAL BACKGROUND......................................................................... 2

THE TERMS OF THE SETTLEMENT.......................................................... 5

ARGUMENT.................................................................................................. 9

I.      THE SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE AND SHOULD BE APPROVED.........................................9

        A.    The Applicable Standards ..................................................9

              B.    The Settlement Satisfies the *Girsh* Factors ...................................10

                    1.    The Complexity, Expense and Likely Duration of the
                          Litigation............................................................................. 10

                    2.    The Reaction of Herley Shareholders to the Settlement..... 11

                    3.    The Stage of the Proceedings and the Amount of
                          Discovery Completed........................................................... 12

                    4.    The Risks of Establishing Liability...................................... 12

                    5.    The Risks of Establishing Damages .................................. 15

                    6.    The Risks of Maintaining the Derivative Action Through
                          the Trial.............................................................................. 15

                    7.    Defendants' Ability to Withstand a Greater Judgment....... 15

                    8.    The Reasonableness of the Settlement in Light of the
                          Best Possible Recovery and All Attendant Risks
                          of Litigation ...................................................................... 16

II.     COURT SHOULD APPROVE THE FEE AWARD .............................18

        A.    The Applicable Standards ..............................................19

B.     Negotiated Attorneys' Fees Are Favored by Courts......................20

C.     Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses
       Because Their Efforts Conferred a Substantial Benefit
       on Herley.........................................................................................22

D.     Other Factors Support Approval of the Fee Award ......................23

       1.     The Time, Effort, and Expenses Expended By Plaintiffs'
              Counsel ............................................................................ 23

       2.     The Contingent Nature of Plaintiffs' Counsel's
              Undertaking....................................................................... 24

       3.     The Skill and Quality of Counsel and Their
              Representation.................................................................... 26

       4.     The Absence Of Any Objection.......................................... 27

CONCLUSION.................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ............................................................. 14

*Barel v. Bank of Am.*,
    255 F.R.D. 393 (E.D. Pa. 2009)..................................................... 24

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)............................................ 9, 10, 11, 20

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)....................................................................... 22

*Brissette v. Heckler¸*
    784 F.2d 864 (8th Cir. 1986) ....................................................... 25

*Cede & Co. v. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ............................................................. 14

*Cherner v. Transitron Elec. Corp.*,
    221 F. Supp. 55 (D. Mass. 1963) ............................................... 25

*Citron v. Burns*,
    1985 WL 11533 (Del. Ch. Feb. 4, 1985) ................................... 17

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)....................................... 20

*Court Awarded Attorney Fees*,
    108 F.R.D. 237 (1985) ............................................................ 20, 21

*Cullen v. Whitman*,
    197 F.R.D. 136 (E.D. Pa. 2000) ................................................. 24

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................... 25

*Emerald Partners v. Berlin*,
    787 A.2d 85 (Del. 2001) ............................................................... 26

*Evans v. Jeff D.*,
    475 U.S. 717 (1986).................................................................... 21

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..................................................................... 2, 10, 13, 16

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ...................................................................... 17

*Hawker v. Consovoy*,
    198 F.R.D. 619 (D.N.J. 2001)........................................................................ 18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................................... 20

*In re Cendant Corp. Derivative Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ............................................................... 15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................ 12, 16, 24

*In re Corel Corp. Inc.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ........................................................... 11

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3d Cir. 1984)........................................................................ 21

*In re Gen. Motors*,
    55 F.3d 768 (3d Cir. 1995)................................................................ 10, 12, 15

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................. 25

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).................................................................... 24

*In re Loral Space and Comm's Inc.*,
    2008 WL 4293781 (Del. Ch. Sept. 19, 2008) .............................................. 13

*In re New Mexico Natural Gas Antitrust Litig.*,
    607 F. Supp. 1491 (D. Colo. 1984)............................................................... 27

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................... 18

*In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*,
    543 F.2d 1058 (3d Cir. 1976)....................................................................... 10

*In re PNC Fin. Serv. Group, Inc.*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006) ................................................................. 12

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) .................................................................. 11, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig*,
   962 F. Supp. 450 (D.N.J. 1997) .................................................................. 11

*In re Rambus Inc. Deriv. Litig.*,
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ........................................................ 24

*In re Ravisent Technologies, Inc.*,
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................................... 11

*In re Safety Components Int'l, Inc. Sec. Lit.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................. 24

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
   2008 WL 185809 (D.N.J. Jan. 14, 2008) ........................................ 17, 18, 19, 22, 24

*In re Walt Disney Co. Deriv. Litig.*,
   907 A.2d 693 (Del. Ch. 2005), *aff'd* 906 A.2d 27 (Del. 2006) ............................... 26

*In re Warner Communications*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................ 27

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .................................................................... 21

*Kahn v. Lynch Communication Sys., Inc.*,
   669 A.2d 79 (Del. 1995) ......................................................................... 26

*Langer v. Brown*,
   913 F.Supp. 260 (S.D.N.Y. 1996) ................................................................ 13

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................... 15, 17

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985) ..................................................................... 21

*Merola v. Atlantic Richfield Co.*,
   515 F.2d 165 (3d Cir. 1975) ..................................................................... 19

*Miller v. Loucks*,
   1992 WL 329313 (N.D. Ill. Nov. 5, 1992) ............................................................ 13

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ........................................................................................... 19, 20

*Ochs v. Ruttenberg*,
   446 F. Supp. 145 (S.D.N.Y. 1978) ....................................................................... 27

*Officers for Justice, et al., v. Civil Serv. Comm., et al.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 21

*Prandini v. Nat'l Tea Co.*,
   557 F.2d 1015 (3d Cir. 1977) .............................................................................. 20

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ......................................................................... 25

*Shlensky v. Dorsey*,
   574 F.2d 131 (3d Cir. 1978) ................................................................ 10, 16, 19, 22

*Stoetzner v. U. S. Steel Corp.*,
   897 F.2d 115 (3rd Cir. 1990) ............................................................................... 11

*Surowitz v. Hilton Hotels Corp., et al.*,
   383 U.S. 363 (1966) ............................................................................................ 19

*Teachers' Ret. Sys. v. A.C.L.N.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................................... 26

*Unite Nat'l Ret. Fund v. Watts, et. al.*,
   2005 WL 2877899 (D.N.J. Oct. 28, 2005) ............................................... 9, 16, 20, 24

*United Technologies Corp. v. Daniell*,
   796 F.Supp. 649 (D. Conn. 1992) ........................................................................ 13

*Weiss v. Mercedes-Benz of North America, Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995), *aff'd,* 66 F.3d 314 (3d Cir. 1995) ................. 11, 12

*Wiener v. Roth*,
   791 F.2d 661 (8th Cir. 1986) ............................................................................... 27

*Zimmerman v. Bell*,
   800 F.2d 386 (4th Cir. 1986) ............................................................................... 17

Plaintiffs Michelle Blair ("Blair") and the Estate of Harvey Houtkin (the "Houtkin Estate") (collectively "Plaintiffs"), individually and derivatively on behalf of nominal defendant Herley Industries, Inc. ("Herley" or the "Company"), respectfully submit this Memorandum pursuant to Fed. R. Civ. P. 23.1(c) in support of their application for final approval of the proposed settlement (the "Settlement") of the above captioned derivative action (the "Action") and for an agreed award of attorneys' fees and expenses (the "Fee Award"). The terms of the Settlement are set forth in the May 10, 2010 Stipulation and Agreement of Settlement (the "Stipulation") agreed to by Plaintiffs, Herley, and the Individual Defendants.[1]

## PRELIMINARY STATEMENT

Plaintiffs have achieved an important settlement whereby Herley has implemented or agreed to implement significant changes to its internal corporate governance to strengthen the Company's board structure (including adding a new independent director), procedures for director elections, accounting oversight, and consideration and approval of related party transactions in a manner that are specifically designed to help address the type of problems that lead to this litigation.

The Settlement is a substantial achievement in light of the circumstances surrounding this action and the considerable risks that Plaintiffs would have faced at trial and through likely appeals. The Settlement is the result of arm's-length negotiations between experienced counsel after a careful, rigorous and thoughtful review of the facts

---

[1] The "Individual Defendants" are Lee Blatt ("Blatt"), Myron Levy ("Levy"), John Thonet ("Thonet"), Admiral Edward Walker ("Walker"), The Estate of Admiral Robert Moore (the "Moore Estate"), Carlos Campbell ("Campbell") and Edward Bogucz ("Bogucz").

and applicable law.  This negotiation process, plus consideration of the nine factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), demonstrate that the Settlement is fair, reasonable and adequate, and should be approved by this Court.

Also, pursuant to the Stipulation and subject to the Court's approval, Herley has agreed to pay Plaintiffs' counsel an award of $975,000 in fees and expenses (the "Fee Award").  Like the Settlement, the Fee Award is the result of arm's-length negotiations between experienced counsel and is fair and reasonable and should be approved by the Court.

Confirming its fairness no Herley shareholder has objected to the Settlement or the Fee Award.[2]  As set forth herein and in the accompanying Declaration of James S. Notis (the "Notis Decl."), the Court should approve the Settlement and the Fee Award in all respects.

## PROCEDURAL BACKGROUND

On July 7, 2006, Blair filed a complaint in this Court styled as a derivative claim, putatively brought on behalf of Herley against the Individual Defendants.  On August 24, 2006, a related shareholder derivative action was filed by Harvey Houtkin in this Court, also brought on behalf of Herley.[3]  On October 11, 2006, the Court consolidated these

---

[2]    The Court's May 10, 2010 Scheduling Order for Approval of Derivative Action (Dkt. No. 165) set a June 29, 2010 deadline for any Herley shareholder to file any objections or otherwise be heard with respect to the Settlement or award of fees and expenses.  No such objections have been filed.

[3]    On July 28, 2008, Houtkin died.  On February 20, 2009, the Court granted Houtkin's unopposed motion to substitute the Houtkin Estate in place of Houtkin, as Co-Lead Plaintiff in the Action.

related derivative actions into the Action for all purposes pursuant to Fed. R. Civ. P. 42(a).

On January 12, 2007, Plaintiffs filed a Verified Consolidated Derivative Complaint (the "Complaint"), alleging claims for breach of fiduciary duty and unjust enrichment against the Individual Defendants.  Specifically, Plaintiffs' Complaint alleged that defendants Levy, Walker, Moore, Thonet, Campbell and Bogucz violated their fiduciary obligations in connection with certain decisions or actions conducted in their capacity as directors of the Herley relating to: (1) the employment and separation of Blatt from Herley; (2) communications with the Department of the Navy in 2006; and (3) the engagement of Herley's outside auditors.  The Complaint further alleged that defendant Blatt violated his fiduciary obligations in connection with his participation in two contracts with the United States Navy for the production of "Power Heads," and one contract with the United States Air Force for the production of "Voltage Control Oscillators," between 2000 and 2002.  Plaintiffs' Complaint also alleged that defendants Levy, Walker, Moore, Thonet, Campbell and Bogucz failed to exercise proper oversight over defendant Blatt in connection with the above-referenced contracts.

The Court on July 20, 2007, granted in part and denied in part Defendants' motions to dismiss. The Court dismissed the Complaint to the extent that Plaintiffs alleged oversight claims against Levy, Walker, Moore, Thonet, Campbell and Bogucz. On June 12, 2008, Defendants filed an Answer to the Complaint.

Between the time of filing of the Complaint and July 2009, the parties engaged in extensive discovery.  In sum, more than 135,000 pages of documents were produced by Defendants and relevant non-parties.  Depositions of twenty-one fact and expert

witnesses (including several multi-day depositions) took place at various locations in Philadelphia, New York, Washington D.C., Massachusetts, Delaware and New Hampshire.

At the conclusion of discovery, the parties filed motions for summary judgment and motions to exclude expert testimony and strike defenses. Following a hearing on January 29, 2010, the Court on February 22, 2010 denied both motions for summary judgment and denied without prejudice the motions to exclude and strike. Trial of the Action was set to commence on May 10, 2010. Prior to trial, both parties filed numerous motions in limine. On April 8, 2010, during the final pretrial conference, the Court heard oral argument on the motions in limine filed by both parties and granted on those motions that were unopposed. On May 3, 2010, counsel for both parties submitted their pretrial memorandums.

From time to time during the course of the Action, the parties engaged in arm's-length discussions concerning a possible settlement of the claim alleged in the Action. As trial approached, the parties engaged in further arms-length negotiations, which resulted in the agreement to settle the Action. On the date the trial was set to begin, the parties, through their counsel, executed the Stipulation that sets forth the comprehensive terms of the Settlement.

On May 10, 2010, the Court signed a scheduling order setting the Settlement Hearing date for July 9, 2010.

Pursuant to the Scheduling Order and Fed. R. Civ. P. 23.1(c), between May 17, 2010 and May 20, 2010, Herley mailed copies of the Notice to All Holders of Herley Industries, Inc. Common Shares of Proposed Settlement of Derivative Action (the

"Notice") to all record holders of Herley common shares as of May 13, 2010 and Herley instructed Broadridge Financial Solutions, Inc. to mail copies of the Notice to brokers of record for distribution to all beneficial owners of Herley common shares. The Scheduling Order set a June 29, 2010 deadline for any Herley shareholder to file any objections or otherwise be heard with respect to the Settlement or Fee Award. No objections have been filed.

## THE TERMS OF THE SETTLEMENT

Pursuant to the Stipulation, Herley has agreed to take all necessary steps to adopt, implement, and maintain the following provisions designed to strengthen and improve Herley's corporate governance:

Board Structure.

● Herley shall increase the size of its Board of Directors to five members and use its reasonable best efforts to identify and recruit an additional qualified and independent director (within the meaning of the Company's Director Independence Standards, defined below) to be appointed to the Board of Directors on or before the date of its next annual shareholders' meeting and in no event later than 13 months after the date of the Company's prior annual shareholders' meeting.

● In nominating new directors in the future, the Company, in the ordinary course of its communications with significant institutional shareholders, may obtain on a confidential basis, views from such shareholders concerning Board member selection and qualifications, including such issues as the experience or expertise of candidates, in the context of evaluating candidates, and will consider those views, provided that the determination of candidates' qualifications and selection of candidates for nomination

shall remain within the discretion of the Nominating Committee.  In exercising such discretion, the Nominating Committee may consider differences of viewpoints, professional experience, education and skills, as well as ethnicity, gender and national origin.

●      Herley shall maintain its Board of Directors as a single class of directors, elected annually.

●      The Company's Audit Committee shall be directly responsible for considering all related party transactions, and determining whether such transactions are fair to the Company and on terms reasonably available to or from unrelated third parties. In considering such related party transactions, the Audit Committee shall have the sole authority and the full power of the Board of Directors to accept or reject such transactions and shall have sole authority to retain such independent legal or other experts as it deems necessary.

●      The Audit, Nominating and Compensation Committees of the Board of Directors will each consist entirely of independent directors within the meaning of the Company's Director Independence Standards, as defined below, and each such Committee shall meet as necessary to fulfill its respective duties.  The Company shall use its best reasonable efforts to include at least one "financial expert" (within the meaning of the rules of the Securities and Exchange Commission and the NASDAQ Stock Market) on the Audit Committee.

●      At least a majority of the Company's Board of Directors, taking into consideration any future nominees, shall be "independent directors" within the meaning of the Company's Director Independence Standards, as defined below.

Director Independence Standards.

● The Company shall follow the Corporate Governance Requirements, as amended from time to time, of the NASDAQ Stock Market (the "NASDAQ Corporate Governance Requirements") in determining whether directors are independent (the "Company's Independence Standards").

Director Stock Ownership.

● At least one-third of non-management directors' annual retainer shall be paid in stock, stock options, or other equity awards.

● Other than in connection with new appointments to the Board, director options shall be granted on a pre-determined set date.

Majority Voting.

● In uncontested director elections, director nominees shall be elected to the Board by a majority of the votes cast. In the event a director does not receive a majority of the votes cast in an uncontested election, the director shall offer his resignation to the Board, which shall convene a meeting within 45 days to review the offered resignation and advise shareholders of the Board's conclusion about accepting or rejecting the offer of resignation and the basis for such decision.

Nomination Procedures.

● The Nominating Committee shall consider all candidates as recommended by a stockholder (or group of stockholders) who owns at least 5% of the Company's outstanding common stock and who continues to own such shares through the date of the applicable meeting (an "Eligible Stockholder").

- An Eligible Stockholder wishing to recommend a candidate must submit the following not less than 90 calendar days prior to the anniversary of the date the proxy was released to the shareholders in connection with the previous year's annual meeting: (1) a recommendation that identifies the candidate and provides contact information; (2) the written consent of the candidate to served as a directors of the Company, if elected; and (3) documentation establishing that the shareholder making the recommendation is an Eligible Stockholder.

- Upon timely receipt of the required documents, the Corporate Secretary will determine if the shareholder submitting the recommendation is an Eligible Stockholder based on such documents. The Corporate Secretary will inform the Eligible Stockholder of his or her determination.

- If the candidate is to be evaluated by the Nominating Committee, the Corporate Secretary will request a resume, a completed director and officer questionnaire, a completed statement regarding conflicts of interest, a waiver of liability for background check from the candidate and such other information as the Nominating Committee deems necessary or desirable. To evaluate the candidate and consider such candidate for nomination by the Board, such documents must be received at least 30 days prior to the annual meeting for the Nominating Committee to evaluate the candidate and consider such candidate for nomination by the Board. Failure to provide the required information in a timely manner may cause the candidate not to be considered.

<u>Oversight Policies</u>.

- The Company's CEO and CFO shall be responsible for ensuring that the Company's accounting policies, including compliance with the requirements of Generally

Accepted Accounting Principles ("GAAP"), as currently in effect or as amended, and is implemented and utilized throughout the Company.  The CFO shall report to the Board or the Audit Committee on a quarterly basis on compliance with GAAP.  The Company will also establish a policy that all complaints received by Herley regarding accounting, internal accounting controls, or auditing matters and all the confidential, anonymous submissions by any Herley employee regarding questionable accounting, internal accounting controls, or auditing matters shall be brought to the attention of the Audit Committee.

Plaintiffs submit that such changes to Herley's internal structure will strengthen and improve the Company's governance and help prevent the type of conduct that lead to this litigation.

## ARGUMENT

I.    **THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED**

   A.    **The Applicable Standards**

Fed. R. Civ. P. 23.1(c) requires court approval of a shareholder derivative action settlement or dismissal.  To approve a proposed settlement the court must find that the settlement is "fair, adequate, reasonable and proper, and in the best interests of the class the shareholders."  *See Unite Nat'l Ret. Fund v. Watts, et. al.*, No. 04-cv-3603, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) citing *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993).  The principal factor to be considered in determining the fairness of a proposed shareholder derivative settlement is the benefit conferred to the corporation in light of the risks of establishing liability and proving damages if the case were not settled

and the costs of prolonging the litigation.  *See Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).[4]  To make this fairness determination, the court applies the nine *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the shareholders to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the derivative action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement agreement in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d at 156-57; *see also Shlensky*, 574 F.2d at 147-49 (applying "*Girsh* factors" in evaluating the fairness of a derivative settlement); *In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1070 (3d Cir. 1976) (same).

**B.      The Settlement Satisfies the *Girsh* Factors**

**1.      The Complexity, Expense and Likely Duration of the Litigation**

The Settlement is fair in light of the cost, complexity and duration of continuing to litigate this case.  Cases in which discovery would be lengthy and opposition "ardent" are attractive to settle, offering an immediate benefit to the corporation while avoiding considerable delay and mounting expenses.  *See In re Gen. Motors*, 55 F.3d 768, 812  (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant

---

[4]      As the Third Circuit has noted:

> The principal factor . . . is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest. . . . The adequacy of the recovery must be considered in the light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation.

*Bell Atlantic*, 2 F.3d at 1311, citing *Shlensky*, 574 F.2d at 147.

with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense); *Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1300-1301 (D.N.J. 1995), *aff'd,* 66 F.3d 314 (3d Cir. 1995) ("[W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury.  Moreover, the time and expense that precedes the taking of such a risk can be staggering.  This is especially true in complex commercial litigation.").

This action settled on the eve of what was anticipated to be a complex trial with an uncertain outcome.  The considerable expense of further litigation through trial and appeals, with the concurrent risk of no recovery in the Action for Herley, provides support for the Settlement.

### 2. The Reaction of Herley Shareholders to the Settlement

While not itself determinative, the reaction of shareholders is an important barometer for the fairness of any settlement.  *See In re Ravisent Technologies, Inc.*, No. 00-cv-1014, 2005 WL 906361, *7 (E.D. Pa. Apr. 18, 2005) (no objectors weighs strongly in favor of fairness of settlement); *In re Corel Corp. Inc.*, 293 F. Supp. 2d 484, 490-91 (E.D. Pa. 2003) (routine to infer general support from small number of objectors but courts should be cautious); *Bell Atlantic*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement); *Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3rd Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *In re Prudential Ins. Co. of Am. Sales Practices Litig*, 962 F. Supp. 450, 537 (D.N.J. 1997), *aff'd In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998)

(small amount of negative responses to settlement favors approval); *Weiss*, 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

The Court's May 10, 2010 Scheduling Order provides that the last day to object to the Settlement was June 29, 2010.  To date, no objections have been filed.

### 3.      The Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *In re PNC Fin. Serv. Group, Inc.*, 440 F. Supp. 2d 421, 433 (W.D. Pa. 2006) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).   This factor "captures the degree of case development that class counsel have accomplished prior to settlement."  *In re Gen. Motors*, 55 F.3d at 813.   "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Id.*; *see also In re PNC*, 440 F. Supp.2d at 433.

Here, the case was settled quite literally on the eve of trial.  Plaintiffs were in a position to evaluate the potential strength of their claims and the risks further litigation at trial.

### 4.      The Risks of Establishing Liability

Not only would further litigation be complex, time consuming and expensive, but Plaintiffs would face substantial risks in proving their case, with a very real risk of recovering nothing for Herley.  To be fair, therefore, the Settlement must balance the risks of establishing liability and damages against the benefits afforded to Herley, and the

immediacy and certainty of a substantial recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157.

As an initial matter, Plaintiffs would have to demonstrate at trial that at least three members of the six member board of directors were conflicted in order to rebut the business judgment presumption and shift the burden to Defendants to show the entire fairness of the challenged conduct. *In re Loral Space and Comm's Inc.,* C.A. Nos. 2808-VCS, 3022-VCS, 2008 WL 4293781, at *21 (Del. Ch. Sept. 19, 2008) ("The entire fairness standard applies where a majority of the board is interested or lacks independence from the interested party."). Plaintiffs' ability to successfully challenge the independence of the board, however, was far from certain. *See Langer v. Brown*, 913 F.Supp. 260, 266 (S.D.N.Y. 1996) ("The fact that several director defendants sat on the same boards of directors of other companies does not in itself establish lack of independence."); *Miller v. Loucks*, No. 91-6539, 1992 WL 329313, *7 (N.D. Ill. Nov. 5, 1992) (rejecting allegations regarding various ties with interlocking boards of directors); *see also United Technologies Corp. v. Daniell*, 796 F.Supp. 649, 652 (D. Conn. 1992).

Even if Plaintiffs were to show lack of independence, Plaintiffs would still face the obstacles of proving that the Individual Defendants breached their fiduciary duties to Herley with respect to: (1) the decision to grant Blatt $9.5 million upon his termination; (2) the decision not to cooperate with the outside auditors and failure to disclose true basis for BDO's resignation as auditor; and (3) the decision to mislead the Navy's investigation to protect Blatt. Although Plaintiffs believe that certain of the Individual Defendants did not act with the degree of care one would expect from a fiduciary and that they would have successfully proven this at trial, it would have been a challenging

13

standard to meet to prove that the Individual Defendants acted in bad faith or were beholden to Blatt after Blatt left the board.

The directors of Delaware corporations are bound by the traditional fiduciary duties of care and loyalty.  Under the business judgment rule, Delaware law presumes "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984).  In exercising these powers, directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders.  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993).  To rebut the presumption of the business judgment rule, plaintiffs have the burden of proving that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith.  *Id.* at 361.  The business judgment rule is inapplicable to director conduct that cannot be attributed "to any rational business purpose."  *Id.*  If the rule is rebutted, the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the "entire fairness" of the transaction to the shareholder plaintiff.  *Id.* at 360.

Considering the complex factual and legal issues at stake, it is far from certain that Plaintiffs could have established liability in the Action.  That Plaintiffs were able to achieve a Settlement in the face of these risks is a testament to the Settlement's fairness and reasonableness, and thus strongly suggests that the Settlement should be approved.

5.     **The Risks of Establishing Damages**

Assuming that liability was eventually established at trial, it remains uncertain what, if any, damages could be recovered on behalf of Herley.   By contrast, the Settlement terms provide the certainty of known, material benefits to the Company.   As the Fifth Circuit has observed:

> Where, as here, the derivative suit is largely an attack on past corporate management practices, as well as on some present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action.

*Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983).

Instead of risking the failure to obtain any benefit for Herley through continued litigation, the Settlement guarantees implementation of important corporate governance changes to prevent future harm, such as the wrongdoing alleged in the Action.

6.     **The Risks of Maintaining the Derivative Action Through the Trial**

In the context of class actions, this factor primarily attempts to weigh the prospects of obtaining and maintaining class certification.  *In re Gen. Motors*, 55 F.3d at 817.   Such risks do not exist in a derivative action.  *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 335 (D.N.J. 2002).   As a derivative action, this factor does not weigh against or in favor of approval.

7.     **Defendants' Ability to Withstand a Greater Judgment**

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement."  *In re Cendant Corp. Litig.*, 264

F.3d at 240.  Here, since the Settlement provides relief of a non-pecuniary nature, the Court is not in a position to determine defendants ability withstand a greater judgment. *See Unite Nat'l*, 2005 WL 2877899, at *4 (finding the Court is unable to comment on the seventh *Girsh* factor in derivative action were the parties settled on corporate governance changes and as a result the factor does not weigh against or in favor of approval). Therefore, this factor does not weigh against or in favor of approval.

> **8.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The most important factor in determining the fairness of the Settlement is the benefit to be derived by Herley.  *Shlensky*, 574 F.2d at 147.  Here, the Settlement provides immediate and substantial benefits for all parties while avoiding the risks inherent in continuing the litigation through trial – particularly the risk of achieving little or no recovery for the Company.  The Settlement provides for substantial and beneficial changes relating to: (1) board structure (*i.e.*, an additional independent board member, single class of directors who are elected annually and greater independence of the members of the Audit Committee, Nominating and Governance Committee and Compensation Committee); (2) changes to board compensation (*i.e.*, at least one-third of non-management directors' annual retainer shall be paid in stock, stock options or other equity awards); (3) nomination produces for board members; (4) majority voting requirements in uncontested director elections; and (5) improved oversight policies.

The Settlement's governance reforms are designed to enhance the procedures by which corporate decision-making at Herley is effectuated, this providing long-term benefits to Herley and its shareholders.  As recognized by the Fourth Circuit in

*Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986), influencing the future conduct of management often serves the interests of a company as well as any other possible litigation result.  *See also Citron v. Burns*, No. 7647, 1985 WL 11533, at *2 (Del. Ch. Feb. 4, 1985) (approving a settlement stipulation and fee award where plaintiff agreed to dismiss the suit for corporate governance changes).   For this reason courts regularly approve non-pecuniary settlements.  *See, e.g., Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992); *Zimmerman*, 800 F.2d at 391 (nonmonetary derivative settlement relief adequate when it provided guidelines for "future management responses to tender offers and takeover bids"); *Maher*, 714 F.2d at 466 (nonmonetary relief adequate for settlement approval).

A recent case where a court recognized the benefits of corporate governance changes in approving the settlement was *In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412, 2008 WL 185809 (D.N.J. Jan. 14, 2008), which involved changes regarding compliance and risk management matters, changes designed to complement the board's oversight functions and changes to the selection, election, and compensation of the Board.  *Id*. at *3.  The court held that the corporate governance changes were a substantial non-pecuniary benefit to the company and justified awarding fees of $9.5 million to plaintiffs' counsel under the substantial benefit doctrine.  *Id.*

Notably, among the corporate governance changes found to be most important (changes regarding the election and compensation of directors) in *Schering-Plough*, are also found in this Settlement.  The corporate governance changes in the Settlement at the board level in this case are very significant.  These major changes include, but are not limited to: (1) adding a fifth member to the Board, who must be independent; (2) the

maintenance of a single class of directors, elected annually (similar to *Schering-Plough*); (3) at least one-third of non-management directors' annual retainer shall be paid in stock, stock options, or other equity awards (similar to *Schering-Plough*); and (4) the Audit, Nominating and Compensation Committees must consist entirely of independent directors. Also, similar to *Schering-Plough*, the Settlement in this case brings management-level changes designed to complement the Board's oversight function. For example, Herley's CEO and CFO shall be responsible for ensuring that the Company's accounting policies, including compliance with GAAP, is implemented and utilized throughout the Company. Also, the CFO must report to the Audit Committee on a quarterly basis about the Company's compliance with GAAP.

Finally, judgment of counsel is entitled to considerable weight when determining whether a settlement is in the range of reasonableness. *See Hawker v. Consovoy*, 198 F.R.D. 619, 633 (D.N.J. 2001); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Here, Plaintiffs' counsel believe that the Settlement is fair and reasonable in light of the significant obstacles to obtaining recovery, the uncertainty of further litigation, and their extensive experience in litigating shareholder derivative actions like this one. For the foregoing reasons, this Court should approve the Settlement.

## II.   COURT SHOULD APPROVE THE FEE AWARD

Along with final approval of the Settlement, Plaintiffs' counsel also seek approval of the Fee Award that has been agreed to by Defendants.

Shareholder derivative cases have long been a favored means for enforcing standards of conduct for corporate officers and directors and in so doing creating a common benefit to the corporation and its shareholders. *See Surowitz v. Hilton Hotels Corp., et al.*, 383 U.S. 363, 371 (1966). If the corporation derives a benefit, the plaintiffs in a shareholder derivative action may recover their expenses, including attorneys' fees, from the corporation on whose behalf their action is taken for the successful prosecution or settlement of the case. *See Shlensky*, 574 F.2d at 149. Here, the Fee Award should be approved because of the substantial benefits the Settlement has conferred and will confer upon Herley and its shareholders in preventing future harm and addressing the misconduct as alleged in the Complaint.

## A.    The Applicable Standards

In cases such as this where the recovery is of a non-pecuniary nature, the payment of attorneys' fees is determined pursuant to the substantial benefit rule. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *see also Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 169-70, (3d Cir. 1975). For a benefit to be substantial, it must be more than technical in consequence, and must be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or would affect the enjoyment or protection of an essential right to the shareholder's interests. *Mills*, 396 U.S. at 396. Courts have long recognized that non-monetary benefits, such as those obtained here, can be of substantial value to corporations and their shareholders and may be rewarded by court-approved attorneys' fees and reimbursement of expenses. *See, e.g., In re Schering-Plough Corp.* 2008 WL 185809, at *3, *Unite Nat'l*,

2005 WL 2877899, at *5; *see also Bell Atlantic*, 2 F.3d at 1317 (citing cases where non-monetary relief was found to be adequate in supporting settlement and attorneys' fees).

### B.     Negotiated Attorneys' Fees Are Favored by Courts

The fact that the attorneys' fees were negotiated at arm's-length, separate and apart from the consideration being provided to the Company, underscores the fact that the fees are reasonable and should be approved. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (holding that an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005), *citing Mills*¸ 396 U.S. at 396 ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.").   Absent evidence of collusion, a negotiated fee is entitled to substantial weight and deference.  *See generally Prandini v. Nat'l Tea Co.*, 557 F.2d 1015 (3d Cir. 1977); *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985).

Here, the parties' negotiations were based upon an analysis of what an appropriate fee would be for the benefits achieved and the fees awarded in similar situations. Plaintiffs' counsel negotiated with their adversaries, who witnessed their efforts first-hand.  Defendants' counsel include attorneys with many years of experience litigating complex shareholder actions and who know the applicable law pertaining to fee awards. All counsel were able to consider and use as precedent fee decisions from other actions of a similar nature.  In such circumstances, the end result of those negotiations – which reflects all parties' experiences as to what is appropriate – is entitled to a great deal of

weight in passing on the fee request.  *See In Re Fine Paper Antitrust Litig.*, 751 F.2d 562, 582 (3d Cir. 1984).

For example, in *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Second Circuit explained that courts should be hesitant to interfere in fee arrangements between settling parties in shareholder actions when defendants have agreed "not to oppose" the payment of fees up to a certain amount:

> [W]here . . . the amount of fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.  It is difficult to see how this could be left entirely to the court for determination after the settlement.

761 F.2d at 905 n.5; s*ee also, Court Awarded Attorney Fees*, 108 F.R.D. at 267 (cited in *Evans v. Jeff D.*, 475 U.S. 717, 738 n.28 (1986); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("[i]n cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.").

Thus, the Court's role in approving the requested Fee Award is very different from a "statutory fee shifting" case, in which the defendant has not agreed to pay plaintiff's counsel's fees and thus reserves the right to challenge every item of work performed that underlies the requested fee.  Here, Defendants have agreed with Plaintiffs' counsel on a fair and reasonable sum and have agreed to pay that sum.  Thus, the Court need only approve the overall Settlement package – including the Fee Award – as fair and reasonable.  *See, e.g., Officers for Justice, et al., v. Civil Serv. Comm., et al.*, 688 F.2d 615, 625 (9th Cir. 1982).

### C.      Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses Because Their Efforts Conferred a Substantial Benefit on Herley

Under the substantial benefit doctrine, counsel who prosecute a shareholder derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and expenses. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *see also Shlensky*, 574 F.2d at 149 ("The plaintiffs in a shareholders' derivative action may . . . recover their expenses, including attorneys' fees, from the corporation on whose behalf their action is taken if the corporation derives a benefit, which may be monetary or nonmonetary, from their successful prosecution or settlement of the case.").

Herley agreed to pay Plaintiffs' counsel's attorneys fees and expenses as part of the Settlement is fully supported under the substantial benefit theory.  The Settlement provides lasting benefits to Herley through the long-term, remedial, therapeutic benefits specifically designed to protect and preserve Herley for the benefit of the Company and its shareholders.   Indeed, the changes to corporate governance procedures, including adding a new, independent director and tying director fees to payment in stock, stock options or other equity awards, will provide significant benefits to Herley and its shareholders.   In light of recent market upheaval, there can be little doubt that well-governed companies with truly independent and engaged boards of directors tend to outperform those that are not perceived to have these qualities.   "Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions." *In re Schering-Plough*, 2008 WL 185809, at *5.[5]  As a result of

---

[5]      Studies have shown that corporate governance reforms have a substantial impact on the valuation and management of public companies.   A leading international consulting firm, *McKinsey & Company*, began in 2000 to survey the largest – approximately 2,000 – institutional investors ($3.25 trillion of assets under management)

the Settlement, Herley and its shareholders are better positioned to reap the benefits of a better-governed Company. In return for achieving that goal, Plaintiffs' counsel are entitled to the fee they negotiated at arm's-length with Defendants' counsel.

### D.       Other Factors Support Approval of the Fee Award

#### 1.       The Time, Effort, and Expenses Expended By Plaintiffs' Counsel

Plaintiffs' counsel has expended substantial time and resources to prosecute the Action. Specifically, the cumulative lodestar for Plaintiffs' counsel is $1,759,312.50. *See* Notis Decl. ¶26. Thus, the requested fee represents a 48% discount to lodestar.[6] The

---

with respect to the value they placed on good corporate governance. The *McKinsey* survey asked: "Suppose you are considering investing in two well-known companies. Both have performed well in the past but are currently going through difficult times. However, their board governance practices differ. Would you be willing to pay more for Company B – having 'good governance' – than for Company A – having 'bad governance'?" Seventy-five percent of institutional investors responded that board practices are at least as important to them as financial performance. Over eighty percent of investors reported that they would pay more for Company B than Company A. The actual premium respondents said they would be willing to pay for a well-governed company in the United States is 18.3%.

The *McKinsey* results have been confirmed by other academic work. A study published in 2003 (Gompers, Ishii, and Metrick) of stock performance and governance characteristics at 1500 large firms during the 1990's showed that a strategy that bought firms with the strongest shareholder rights and sold firms with the weakest rights would have earned abnormal returns of 8.5 percent per year during the sample period. *See* Paul A. Gompers, Joy L. Ishii, and Andrew Metrick, *Corporate Governance and Equity Prices*, Quarterly Journal of Economics 118 (2003) (finding that "firms with stronger shareholder rights had higher firm value, higher profits, higher sales growth, lower capital expenditures, and made fewer corporate acquisitions."). Another study (Cremers and Nair) from 2003 found that combining internal and external corporate governance mechanisms produced annualized abnormal returns of ten to fifteen percent. *See* K.J. Martijn Cremers and Vinay B. Nair, *Governance Mechanisms and Equity Prices*, Yale International Center for Finance Working Paper No. 03-15; NYU Center for Law and Business Research Paper No. 03-09 (August 2003).

[6]   Indeed, in lodestar/multiplier cases in the Eastern District of Pennsylvania pursuant to the federal class action rules, multipliers to lodestar are common. *See, e.g., In*

Fee Award is well within the range of fees awarded in other federal courts in similar derivative litigation settled for corporate governance changes. *See In re Schering-Plough*, 2008 WL 185809, at *4-6 (awarding $9.5 million in attorneys' fees); *In re Rambus Inc. Deriv. Litig.*, No. C 06-3513, 2009 WL 166689, at *3-4 (N.D. Cal. Jan. 20, 2009) (awarding $2 million in attorneys' fees); *Unite Nat'l*, 2005 WL 2877899, at *5-6 (awarding $9.2 million in attorneys' fees and expenses). Thus, the time expended by Plaintiffs' counsel litigating the Action supports the requested, agreed-upon award of attorneys' fees.[7]

### 2.    The Contingent Nature of Plaintiffs' Counsel's Undertaking

Plaintiffs' counsel prosecuted this case on a wholly contingent basis and advanced all costs of the litigation. Plaintiffs' counsel thus faced the significant risk of recovering nothing for Herley and its shareholders, and thereby, receiving no compensation for their efforts. The contingent nature of Plaintiffs' counsel's engagement in the Actions should be given weight by the Court in reviewing the Fee Award as reasonable. *See Brissette v.*

---

*re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (approving $32 million fee award representing multiplier of 2.7 over lodestar); *Cullen v. Whitman*, 197 F.R.D. 136, 150-151 (E.D. Pa. 2000) (approving a fee of approximately $2.4 million and finding that a multiplier of 2.04 was reasonable); *Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) (fee of $390,000 and multiplier of 1.35 was reasonable); *see also In Re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (the Third Circuit recognizes multipliers ranging from one to four are frequently awarded in common fund cases employing the lodestar method); *In re Cendant Corp. Derivative Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002) (multiplier of 2.59); *In re Safety Components Int'l, Inc. Sec. Lit.*, 166 F. Supp. 2d 72 (D.N.J. 2001) (multiplier of 2.81).

[7]    Plaintiffs' counsel incurred $63,136.75 in expenses for prosecuting the Action, which will be reimbursed as part of the Fee Award. *See* Notis Decl. ¶28. These expenses are reasonable, were necessarily incurred in connection with the Action.

*Heckler,* 784 F.2d 864, 865-66 (8th Cir. 1986) (reversing and remanding based on district court's failure to take "into account any contingency factor" in awarding attorneys' fees where plaintiff prevailed in "a case with a high risk of loss, which would, if lost, produce no fee").  As the Second Circuit stated in *Detroit v. Grinnell Corp.*: "[a] lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."  495 F.2d 448, 470 (2d Cir. 1974) *citing Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963).

When Plaintiffs' counsel undertook the representation of the Plaintiffs in the Action, they were aware that they would devote hours of hard work to the prosecution of a difficult case without any assurance of receiving any fees or even reimbursement for out-of-pocket expenses.  Plaintiffs' counsel was also aware that the risk of non-payment in contingent-fee shareholder litigation is quite real.  *See In re Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("[T]here are numerous contingent cases . . . where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever.  Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.") (citations omitted).  Indeed, some shareholder actions have been dismissed outright on motion practice or ultimately ended in post-trial defeat without any fee earned or awarded, which included plaintiffs' counsel's reimbursement of substantial out of pocket expenses.  *See, e.g., Emerald*

*Partners v. Berlin*, 787 A.2d 85 (Del. 2001) (entering judgment for defendants on all claims after two trials); *Kahn v. Lynch Communication Sys., Inc.,* 669 A.2d 79 (Del. 1995) (dismissal of all plaintiffs derivative claims on appeal).[8]

Thus, while Plaintiffs' counsel succeeded in obtaining an excellent result for Herley and its shareholders, it cannot be disputed that they incurred substantial risk that the Action would be unsuccessful and that their efforts would go entirely uncompensated. Plaintiffs' counsel's requested Fee Award appropriately reflects the risk that Plaintiffs' counsel would expend substantial time, effort, and costs only to have the Derivative Actions dismissed. Thus, the Fee Award should be approved based on the contingent nature of Plaintiffs' counsel's undertaking.

### 3.    The Skill and Quality of Counsel and Their Representation

Another factor the Court may consider on an application for counsel fees is the skill and quality of Plaintiffs' counsel and their representation. *See, e.g.*, *Teachers' Ret. Sys. v. A.C.L.N.*, No. 01-11814, 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004); *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  It took considerable skill to litigate the Action and achieve this Settlement given the inherent complexities of the case and the unique challenges of shareholder derivative actions.  To successfully pursue the derivative claims, Plaintiffs' counsel had to possess expertise in Delaware law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and

---

[8]    Also, for example, in the well-known *Disney* derivative action, plaintiffs' counsel devoted thousands of hours, and incurred millions of dollars in expenses, only to see judgment entered against them on all claims, which was affirmed on appeal.  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005), *aff'd* 906 A.2d 27 (Del. 2006).

analyze facts giving rise to Plaintiffs' claims from thousands of pages of documents and numerous depositions.

Plaintiffs' counsel assembled a team that possessed the necessary expertise. These combined talents allowed counsel to plead claims and theories of liability to pursue the Action, obtain the discovery they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of Herley. The corporate governance reforms, especially those at the Board level, are a testament to the diligence, determination and hard work of Plaintiffs' counsel.

Defendants were likewise represented by highly capable and well-regarded lawyers, and the standing of opposing counsel may also be considered in determining an allowance of counsel fees. *See In re Warner Communications*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Defendants here were represented by experienced, skillful and well-respected attorneys that vigorously defended their clients' interests. Clearly, they were motivated to negotiate an attorney fee provision that was fair and in the best interests of their clients. Under these circumstances, the fact that they have agreed to the Fee Award is a testament to its reasonableness and fairness, and therefore, warrants this Court's approval.

### 4.    The Absence Of Any Objection

None of Herley's shareholders have objected to the disclosed Fee Award. *See, e.g., Wiener v. Roth*, 791 F.2d 661, 663 (8th Cir. 1986); *In re New Mexico Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1507 (D. Colo. 1984); *Ochs v. Ruttenberg*, 446 F. Supp. 145, 149 (S.D.N.Y. 1978). Given the favorable reaction of Herley shareholders,

and particularly in light of the other factors discussed, the Fee Award should be approved.

## **CONCLUSION**

Plaintiffs' counsel respectfully submit that the Settlement is an excellent result for Herley and its shareholders, and that it meets the fair, reasonable and adequate standard and should be approved by the Court.  Likewise, the Court should approve the Fee Award of $975,000 as agreed in the Stipulation.

Dated: July 2, 2010

**LAW OFFICES BERNARD M. GROSS, P.C.**

By:    s/ Deborah R. Gross-DG639
      Deborah R. Gross (ID No. 44542)
Suite 450, Wanamaker Building
Juniper and Market Streets
Philadelphia, Pennsylvania 19107
Tel: 215-561-3600
Fax: 215-561-3000

**GARDY & NOTIS, LLP**
James S. Notis (*pro hac vice*)
Jennifer Sarnelli (*pro hac vice*)
Charles A. Germershausen
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

**FARUQI & FARUQI, LLP**
Jacob A. Goldberg (ID No. 66399)
101 Greenwood Avenue, Suite 600
Jenkintown, Pennsylvania 19046
Tel: 215-277-5770
Fax: 215-277-5771

***Co-Lead Counsel for Plaintiffs***

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10016
Tel: 212-983-9330
Fax: 212-983-9331

**LAW OFFICES OF MARC HENZEL**
Marc S. Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, Pennsylvania 19004
Tel: 610-660-8000
Fax: 610-660-8080

*Counsel for Plaintiffs*